The document below is hereby signed.

Signed: August 7, 2019



*S. Martin Teel, Jr.*
*S. Martin Teel, Jr.*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| NEW PITTS PLACE, LLC, | ) | Case No. 18-00527 |
| | ) | (Chapter 11) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter |

MEMORANDUM DECISION AND ORDER RE
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

The debtor objected to the amended proofs of claim of Hunterview Condominium Association ("Hunterview") and has filed a motion seeking partial summary judgment:

(1) disallowing Hunterview's claims for assessments which allegedly came due more than three years prior to institution of foreclosure proceedings on June 28, 2018, regarding condominium units 101 and 102 and which came due more than three years prior to the bankruptcy case filing on August 2, 2018, regarding Units 301, 303 and 304;

(2) disallowing Hunterview's claims for post-petition special assessments of $4,207 allegedly imposed regarding each of the debtor's units; and

(3) decreeing that the debtor is entitled to set off

against condominium assessments for its payment in November 2018 of a $2,805.64 payment of water bills on behalf of Hunterview.

I

LAPSED LIENS

The amounts that Hunterview seeks pursuant to its proof of claim were for periods on or after March 2014.  On June 28, 2018, Hunterview commenced foreclosure proceedings concerning Units 101 and 102 by recording and serving Notices of Foreclosure Sales of Condominium Units regarding each unit (the "Foreclosure Notices").  Hunterview also served the debtor with notices of its intention to pursue foreclosure, but it did not record Foreclosure Notices or otherwise commence foreclosure proceedings against Units 301, 303 or 304 prior to the filing of the debtor's bankruptcy case.  The debtor filed the present case on August 2, 2018.

Hunterview had liens for the debtor's unpaid assessments under D.C. Code § 42-1903.13(a) from the dates the assessments (or any installment thereof) became due and payable.  However, D.C. Code § 42-1903.13(e) provides:

> The lien for assessments provided herein shall lapse and be of no further effect as to unpaid assessments (or installments thereof) together with interest accrued thereon and late charges, if any, if such lien is not discharged or if foreclosure or other proceedings to enforce the lien have not been instituted within 3 years from the date such assessment (or any installment thereof) become due and payable.

2

As to the amounts asserted in Hunterview's proof of claim, Hunterview filed a notice of foreclosure on June 28, 2018, regarding the debtor's Units 101 and 102.  Accordingly, as to those two units, liens exist only for amounts that were assessed on or after 3 years before the filing of the notice of foreclosure on June 28, 2018.  Because no foreclosure proceedings had been instituted regarding the liens for the unpaid assessments regarding the debtor's units 301, 303, and 304, before the debtor commenced this case on August 2, 2018, the debtor is correct that liens as to those units exist only as to amounts that were assessed on or after 3 years before the filing of the debtor's bankruptcy case on August 2, 2018.

Hunterview defends by arguing that it recorded liens against the debtor's units on February 24, 2011.  However, those liens were for amounts that came due from May 2008 to February 2011.  The amounts that Hunterview seeks pursuant to its proof of claim were for periods after February 2014, and the liens recorded in 2011 obviously did not pertain to amounts that came later, starting in 2014.  Moreover, § 42-1903.13(e) clearly indicates that a lien lapses after three years unless the lien is discharged, or if foreclosure or other proceedings to enforce the lien are instituted.  There is no indication that Hunterview instituted a foreclosure or any other proceeding to enforce the liens recorded on February 24, 2011.  In fact, there is no

indication that Hunterview initiated foreclosure, or any other proceeding to enforce any lien, until June 28, 2018.

> Hunterview also contends that:
>
> Debtor made payments towards assessments in the intervening years since these particular liens were recorded. Therefore, NPP LLC's claim that HVCA's debt is cut off to 2015 fails and HVCA should be permitted to pursue the full amount of the debt that it seeks against NPP LLC.

However, whether the debtor did or did not make payments toward any liens recorded is irrelevant under § 42-1903.13 as to whether the liens have lapsed. Section 42-1903.13 does not provide an exception from lapsing for liens toward which the debtor makes payments. Therefore, I dismiss this argument as irrelevant.

The debtor seeks disallowance of Hunterview's claims with respect to all amounts assessed before June 28, 2015, on units 101 and 102, and all amounts assessed before August 2, 2015 on units 301, 303, and 304. Because Hunterview's liens lapsed as to such amounts, the debtor is entitled to disallowance of the claims for such amounts as secured claims, the status asserted on the proofs of claim.

The debtor's confirmed plan called for payment of allowed unsecured claims over time, and if the amounts that were secured by Hunterview's lapsed liens were asserted instead as unsecured claims and allowed as such, Hunterview would be entitled to receive the treatment the debtor's confirmed plan accorded allowed unsecured claims (payments of $3,000.00 per quarter for

4

the class of allowed unsecured claims). The debtor's motion implicitly assumes that for the claims for which liens lapsed, the resulting unsecured claims are themselves unenforceable as well, and cannot be allowed claims. In response, Hunterview has not argued that the claims should be allowed as unsecured claims. Nevertheless, I will give Hunterview the opportunity to file further amended proofs of claim to assert the resulting unsecured claims. However, for reasons discussed below it is likely those unsecured claims would be disallowed in vast part or in their entirety.

The three-year statute of limitations of D.C. Code § 12-301(7), applicable to enforcing contracts not under seal, may bar the unsecured claims.[1] The debtor will have the opportunity to raise that defense if Hunterview files further amended proofs of claim to assert the unsecured claims arising from the lapsing of its liens. (Although the debtor has not invoked the statute of limitations defense previously as an objection, Hunterview has not yet attempted to assert that the claims should be allowed as unsecured claims, and, accordingly,

---

[1] "Under the Bankruptcy Code, a claim is allowed except to the extent that the claim 'is unenforceable against the debtor and property of the debtor under any agreement or applicable law.' 11 U.S.C. § 502(b)(1). Accordingly, any claim that is time-barred by a statute of limitations is unenforceable under applicable law, and must be disallowed." *In re Hardy*, No. 16-00280, 2018 WL 1352674, at *2 (Bankr. D.D.C. Mar. 13, 2018).

5

the debtor has not waived the statute of limitations defense.) The debtor will not need to raise anew the objections it has already made that apply whether the claims are asserted as secured or unsecured (including the objection that only a $200 assessment was owed for each of its units for each of the applicable months).[2]

Partial payment of a claim under a contract may cause the statute of limitations to begin to run anew. *Feldman v. Gogos*, 628 A.2d 103, 105 (D.C. 1993); *Dulberger v. Lippe*, 202 A.2d 777, 778 (D.C. 1964). However, the claims here are for each unpaid assessment, and the partial payment of one assessment would not cause the revival anew of the statute of limitations as to other assessments. Moreover, as to each of the $250 assessments at issue, it appears that the debtor was taking the position that only $200 was properly assessed and owed for each month, and its payment of $200 (the only amount it acknowledged to be owing) could hardly be considered an acknowledgment that it owed the

---

[2] I anticipate that only the statute of limitations would be raised as a new objection to the claims that are now unsecured claims. Hunterview has had advance notice that the statute of limitations is a likely defense. Accordingly, I will proceed to try, at the trial of the currently pending objection to Hunterview's claims, any additional objections to unsecured claims Hunterview decides to assert. The debtor will be required by September 5, 2019, to give notice of such additional objections (including any objection based on the statute of limitations). It does not appear that there would be any need to delay the trial as to such additional objections, but a party may seek a delay if there is any such need.

contested $50 extra amount Hunterview asserted as an assessment. Finally, even if the payments could be deemed to cause the running of the statute of limitations to recommence upon the making of the payments, that would not likely help Hunterview substantially: if, as is likely, the payments of $200 each were made in the month of each assessment, the statute of limitations would have expired before the commencement of this case except for the $100 Hunterview claims remains owed as the two most recent assessments for which liens lapsed.  This latter point warrants elaboration as follows.

For Unit 101, there were assessments of $250 each for the months of March 1, 2014, through June 1, 2014, and the unpaid balance of those assessments are now unsecured claims due to the lapse of the liens for such assessments.  There were only partial payments of $200 each for the assessments of March 1, 2014, through December 1, 2014, with no late fee charged.  If each $200 payment was made later in the month of the $250 assessment, the payment would have delayed the commencement of the running of the the statute of limitations regarding the $50 unpaid balance only to that later date in the same month.  The three-year statute of limitations would have started to run as to each assessment on dates in 2014, and expired on dates in 2017, before the commencement of the bankruptcy case on August 2, 2018 (and before the commencement of foreclosure proceedings on June 28, 2019,

7

Case 18-00527-SMT    Doc 116    Filed 08/07/19    Entered 08/07/19 15:19:03    Desc Main
          Document      Page 8 of 11

even if the complaint in that proceeding included a claim for unsecured claims).

For Unit 102, no partial payments were made for the claims that are now unsecured claims due to the lapsing of liens.

For Unit 301, the last partial payment was for the assessment for December 2014, and if that payment was made in the latter part of the month, the running of the statute of limitations would have begun as of late 2014, and the three-year limitations period would have expired well before this case began on August 2, 2018.

For Units 303 and 304, there were partial payments of $200 each for each of the $250 assessments for March 1, 2014, through August 1, 2015 (the assessments for those units for which Hunterview now has only unsecured claims due to the lapsing of its liens).  If each payment was made during the month the assessment arose, this would mean that the statute of limitations would start to run when the payment was made and, except for the assessment for August 1, 2015, more than three years would have run by the time this case began in 2015.  Accordingly, it is likely that no more than $100 of unsecured claims (the $50 balances owed for the two assessments of August 1, 2015), might not be barred by the statute of limitations.

III

SPECIAL ASSESSMENT

Hunterview concedes that the special assessments of $4,207 allegedly imposed regarding each of the debtor's units is stale, and ought to be disallowed. Accordingly, the special assessments of $4,207 on each of the debtor's units are disallowed.

IV

SETOFF

Hunterview further concedes that the debtor is entitled to a setoff, to the extent the debtor can prove payments it made toward Hunterview's water bills. However, Hunterview has not presented evidence to contradict the debtor's principal's affidavit establishing that the debtor paid Hunterview water bills totaling $2,805.64 in November 2018. The debtor alerted Hunterview by an e-mail of November 21, 2018, that the debtor would be making the $2,805.64 payment to cure the arrearage on the water bill. Hunterview obviously should have knowledge whether the payment was made, and has not submitted an affidavit or declaration under Fed. R. Civ. P. 56(d) setting forth specified reasons why it cannot present facts essential to justify an opposition. Therefore, the debtor will be granted a setoff as of November 2018 for payments of $2,805.64 it made toward Hunterview's water bills. There are other setoff defenses the debtor has raised in objecting to the claims, and those

remain for determination at trial.

## V

## ORDER

In accordance with the foregoing, it is

ORDERED that Hunterview has no liens for:

- the assessments due prior to June 28, 2015, regarding the debtor's Units 101 and 102; and
- the assessments due prior to August 2, 2015, regarding the debtor's Units 301, 303, and 304,

and the claims that Hunterview has secured claims for the amounts owed pursuant to those assessments are disallowed, but:

- within 14 days after entry of this order, Hunterview may file further amended proofs of claim asserting, in the alternative, that if the claims for amounts owed pursuant to those assessments are not secured claims, Hunterview has unsecured claims for the amounts owed pursuant to those assessments; and
- if any such further amended proofs of claim are filed, the debtor may raise any additional objections not already raised that it has to the allowance of claims for the amounts owed pursuant to such assessments, including the defense of the statute of limitations with regard to the claims as unsecured claims, but the debtor shall give notice of any such additional

       objections by September 5, 2019, with the objections (both those already raised and any new objections) to be tried with the objections to Hunterview's current amended proofs of claim at the trial set for September 24, 2019.

It is further

    ORDERED that the special assessments of $4,207 on each of the debtor's units are disallowed.  It is further

    ORDERED that the debtor is granted a set off of $2,805.64 for payments made toward water bills in behalf of Hunterview in November 2018.

                                                    [Signed and dated above.]

Copies to: Recipients of e-notifications in the case.